860 P.2d 206

**STATE of New Mexico,
Plaintiff–Appellee,**

v.

**Lloyd Keith JORDAN, Defendant–
Appellant.**

No. 13880.

Court of Appeals of New Mexico.

July 28, 1993.

Certiorari Denied Sept. 3, 1993.

Tom Udall, Atty. Gen., William McEuen, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

Monica D. Munoz, Albuquerque, for defendant-appellant.

## OPINION

MINZNER, Chief Judge.

Defendant appeals his convictions for several counts of criminal sexual penetration of a minor and criminal sexual contact of a minor, raising four issues: (1) the exclusion of evidence concerning (a) an allegation of sexual abuse allegedly made by the victim against her father five years earlier, and (b) the details of a juvenile's conviction for criminal sexual contact and battery of the victim six months earlier; (2) the admission of evidence concerning uncharged conduct by Defendant; (3) ineffective assistance of counsel at trial; and (4) the denial of Defendant's request for a hearing on his motion for a new trial. Issues raised in the docketing statement but not briefed are deemed abandoned. *State v. Scott*, 113 N.M. 525, 527, 828 P.2d 958, 960 (Ct.App.1991), *cert. quashed*, 113 N.M. 524, 828 P.2d 957 (1992). We affirm.

## FACTS

In July 1989, Defendant lived in a trailer park next door to the ten-year-old victim, her parents, and her eight-year-old brother. The victim's parents often fought violently with one another. The incident for which Defendant was convicted occurred after the victim's mother took her and her brother to Defendant's trailer to stay for several days in response to a prolonged fight with the victim's father.

At trial, approximately two years later, the victim, now twelve, and her brother, now ten, both testified that their mother was in the shower when they and Defendant went into the back bedroom to tell ghost stories. The lights were out. The victim testified that while roughhousing with them, Defendant pulled down her clothing and sexually molested her by performing cunnilingus, inserting his finger into her vagina, touching her breasts and buttocks, and rubbing his penis on her vagina and stomach. The victim's brother testified that he observed Defendant touching the victim "on her private" with "[h]is private." According to both children, the victim's brother jumped on Defendant's back in an apparent attempt to stop Defen-

dant. Defendant stopped, according to the children, after their mother came out of the shower. The victim testified that Defendant then told her not to tell anybody what had happened and gave her and her brother candy.

The victim did not say anything to her mother that night, but when her father came over the next morning, she told him about the incident after he questioned her. She testified that she told her father what had happened only after he asked her whether Defendant had done "anything bad to" her. The medical evidence consisted of redness in the victim's vaginal area and a hair taken from her vaginal area that was consistent with Defendant's pubic hairs.

The defense theory was that no sexual molestation occurred, but rather the victim fabricated a story in an effort to reunite her parents. The defense also suggested that the victim's father encouraged her to accuse Defendant of sexual misconduct because the father was jealous of Defendant and thought the victim's mother was having an affair with him.

## EXCLUSION OF EVIDENCE

During a pretrial motion hearing, the State asked the trial court to exclude evidence that when the victim was four, she said her father had sexually abused her. At the same hearing, the court also entertained argument concerning the juvenile's conviction. The court excluded evidence of the victim's allegation of sexual abuse by her father and reserved a ruling on the evidence concerning the juvenile's conviction. Ultimately the court ruled it would admit a statement that the victim had reported she was a victim of sexual assault by a juvenile who lived in the trailer park and that he pled no contest to the charge. On appeal, Defendant argues that the trial court erred in denying him an opportunity to explore these matters on examination of the witnesses.

The trial court is vested with great discretion in balancing the probative value of evidence against the danger of unfair prejudice, and the reviewing court will not

overturn evidentiary rulings made in exercising that discretion absent an abuse of that discretion. *See generally State v. Chamberlain,* 112 N.M. 723, 726, 819 P.2d 673, 676 (1991). We examine the trial court's rulings excluding the evidence in question in light of its discretion in making evidentiary rulings. SCRA 1986, 11–403 provides that relevant evidence may be excluded if the trial court determines that any probative value is outweighed by the danger of unfair prejudice, confusion of the issues, or waste of time. SCRA 1986, 11–413 provides similar discretion in the context of evidence of past sexual conduct. Contrary to Defendant's argument, these rules apply to the alleged errors now under consideration. *State v. Ramos,* 115 N.M. 718, 721, 858 P.2d 94, 97 (Ct.App.1993); *Scott,* 113 N.M. at 530, 828 P.2d at 963.

We first address the evidence concerning the victim's allegation of sexual abuse by her father. At the pretrial hearing, the State contended that the evidence should be excluded because the victim denied making the allegation at the time it was said to have occurred and consistently denied that her father had sexually abused her. Defendant conceded that the victim denied the abuse occurred. On appeal, Defendant argues that he made a sufficient showing that the victim had made false allegations in the past, and thus the trial court abused its discretion in granting the State's motion.

█ We are not certain what evidence the trial court actually excluded. Defendant argues that he was denied an opportunity to cross-examine the victim, so we assume he wanted to cross-examine her about the allegation or perhaps about the abuse, *see* SCRA 1986, 11–608(B), and then impeach her with her mother's testimony. *See* SCRA 1986, 11–801(D)(1)(a). Our evidentiary rules permit the use of specific instances of conduct on cross-examination "for the purpose of attacking or supporting his [or her] credibility ... concerning [the witness's] character for truthfulness or untruthfulness," *see* SCRA 11–608(B), but the general rule is that the cross-examiner is bound by the answer elicited from the witness. *Scott,* 113 N.M. at 530, 828 P.2d at 963.

If what Defendant wanted to do was to cross-examine the victim about the prior allegation, elicit a denial, and then introduce her mother's testimony that the prior allegation had been made, he would not have offered any evidence tending to show that the allegation was false. If what Defendant wanted to do was to cross-examine the victim about the abuse and the prior allegation, elicit a denial of both, and then introduce the mother's testimony that both had occurred, he still would not have introduced evidence of a prior false allegation, but only of inconsistent statements. If Defendant wished to cross-examine the victim about the abuse, elicit a denial, and then introduce the mother's testimony that the victim had made an allegation of abuse, there would have been evidence from which a jury could have determined that there had been a prior false allegation, but that evidence would have been extrinsic evidence on the issue of credibility, excludable under SCRA 11–608(B) as improper rebuttal. Based on the present record, we believe the trial court was entitled to conclude that the mother's testimony would have been improper rebuttal, *see State v. Vigil,* 103 N.M. 583, 589–90, 711 P.2d 28, 34–35 (Ct.App.1985), and that without the mother's testimony, the victim's testimony on the issue of sexual abuse by her father lacked sufficient probative value to justify admitting it. *See* SCRA 11–403.

We conclude that there is no basis in the record on direct appeal for determining that the trial court erred in granting the State's motion. Defendant failed to show that there was admissible proof of relevant and material evidence within the meaning of SCRA 11–403.

█ We now turn to the details of the prior sexual assault by a juvenile. We are not persuaded that Defendant ever provided the trial court with a basis for ruling that there was information relevant and material to the case. If Defendant was attempting to show that the victim made another false allegation of abuse, then, as the trial court suggested, the fact that the

juvenile pled no contest is evidence contrary to a conclusion that the victim made a false allegation. *See State v. Marquez,* 105 N.M. 269, 270, 731 P.2d 965, 966 (Ct. App.1986), *cert. denied,* 105 N.M. 211, 730 P.2d 1193 (1987). To the extent that Defendant suggests that the testimony of a neighbor would have supported his contention that the allegation against the juvenile was false, we again point out that the neighbor's testimony would have been inadmissible extrinsic evidence. *See Scott,* 113 N.M. at 530, 828 P.2d at 963.

Defendant suggests that the evidence of past sexual conduct was admissible for another purpose, but he has not shown that the specifics of the conduct would have given the victim knowledge about particular sexual acts or terms relating to the present charges. *See generally State v. Fish,* 101 N.M. 329, 332, 681 P.2d 1106, 1109 (1984) (insufficient similarity of previous allegations to show possible fabrication). Thus, we do not think that the trial court abused its discretion in limiting cross-examination or further inquiry of the victim concerning the juvenile's conviction. To the extent that Defendant asserts that the failure to make a showing of the specifics of the juvenile assault amount to ineffective assistance of counsel, we address that issue below.

## ADMISSION OF EVIDENCE

■ During the same pretrial hearing at which the prior issue was argued, the trial court also ruled that it would admit evidence to be offered by the State concerning (a) an incident in a swimming pool in the summer of 1988 when Defendant allegedly put his hand under the victim's swimsuit while giving her swimming lessons, and (b) Defendant's masturbating in front of his living room window, which faced the victim's bedroom window. On appeal, Defendant argues that the evidence was offered to show that if Defendant committed the prior acts, then he was more likely to have committed the crimes charged and that, even if admissible, its probative value was outweighed by its prejudicial effect. Thus, he contends that the ruling was improper under SCRA 1986, 11–404(B) and –403.

Several recent cases have considered the issue of whether evidence of uncharged conduct is admissible, notwithstanding the prohibition in SCRA 11–404(B) against propensity evidence or evidence of character to prove guilt of a specific charged act. *State v. Montoya,* 116 N.M. 72, 860 P.2d 202 (Ct.App.1993); *State v. Landers,* 115 N.M. 514, 853 P.2d 1270 (Ct.App.1992), *cert. quashed,* 115 N.M. 535, 854 P.2d 362 (1993); *State v. Lamure,* 115 N.M. 61, 846 P.2d 1070 (Ct.App.1992), *cert. denied,* 114 N.M. 720, 845 P.2d 814 (1993); *State v. Lucero,* 114 N.M. 489, 840 P.2d 1255 (Ct.App.), *cert. denied,* 114 N.M. 413, 839 P.2d 623 (1992). Based on these cases, we hold the trial court did not abuse its discretion in ruling that the State's evidence concerning the uncharged conduct by Defendant would be admitted.

Based on these cases, two factors seem paramount: whether the State made a sufficient showing that the evidence would serve a legitimate purpose other than to show character, *see* SCRA 11–404(B), and whether the probative value was substantially outweighed by the danger of unfair prejudice or other factors. *See* SCRA 11–403; *see generally State v. Aguayo,* 114 N.M. 124, 128–32, 835 P.2d 840, 844–48 (Ct.App.) (discussing requirements for admission of prior uncharged conduct), *cert. denied,* 113 N.M. 744, 832 P.2d 1223 (1992). In this case, there was a legitimate non-character use of the evidence. As noted by the trial court in making its ruling, the State intended to offer the testimony to explain why the victim's father questioned her and to counter Defendant's theory that the victim's father had encouraged a false accusation. That is what the State did at trial.

During direct examination of the victim, she testified that she had a bad experience with Defendant during the previous summer. She stated that while Defendant was teaching her to swim, he stuck his hand inside her bathing suit. She also testified that after the pool incident, Defendant used to stand naked in his living room window across from her bedroom window, hugging himself and licking his hand and

putting it on his penis. She testified that this went on every night for about a year. She told her parents about both situations. Defendant cross-examined her about the position of the windows, when the incidents occurred, and how she could see Defendant after her parents put tinfoil on the window.

The victim's father testified that the victim and her brother told him that Defendant was exposing himself in his window and shining lights. He also testified that he was told about the pool incident. These incidents were used to justify why the victim's father was concerned about his children's safety while they were staying at Defendant's house and why he asked the victim if anything bad had happened. The victim's father was also cross-examined about the incidents, particularly their timing and what measures were taken to protect the children.

On this basis, we conclude that the trial court did not err in ruling SCRA 11–404(B) was not a barrier to the State's evidence. That brings us to the question of whether the trial court abused its discretion in admitting the evidence over Defendant's objection that it was more prejudicial than probative. *See* SCRA 11–403. Under that rule, as we noted in analyzing the trial court's rulings excluding evidence, we will defer to the trial court's evidentiary rulings by recognizing the court's wide discretion under the rules of evidence. "We recognize that while the standard of appellate review governing rulings entrusted to the trial court's discretion is deferential, it does not require us to affirm." *State v. Ferguson*, 111 N.M. 191, 192, 803 P.2d 676, 677 (Ct.App.), *cert. denied*, 111 N.M. 144, 802 P.2d 1290 (1990). "[T]he scope of our review depends in part on the particular nature of the question the trial court was called upon to answer." *Id.* at 192–93, 803 P.2d at 677–78.

We think there can be no question that the evidence was prejudicial, but we think the question of whether it was more prejudicial than probative is one on which reasonable minds can differ. *Cf. Aguayo*, 114 N.M. at 128, 835 P.2d at 844 ("State offered the trial court no rationale for the admission of Defendant's prior 'bad acts' "). That is, the trial court might have concluded that the jury needed to be told the context in which the victim and her father claimed he solicited her account in order to evaluate the likelihood that he had or had not encouraged a false accusation.

In addition, we note that the alleged incident in the swimming pool was directed specifically toward this victim and was similar to the conduct with which Defendant was charged. While Defendant's masturbating in his living room window is not exactly the same type of conduct, it may be viewed as sexually explicit conduct directed toward the victim. Thus, the trial court could also have determined that the evidence was probative of Defendant's lewd and lascivious disposition toward the victim. *See Landers*, 115 N.M. at 518, 853 P.2d at 1274. This rationale additionally supports the trial court's exercise of discretion. We therefore conclude that the trial court did not abuse its discretion in admitting the evidence of the two incidents over Defendant's objections.

## INEFFECTIVE ASSISTANCE OF COUNSEL

▇ To establish ineffective assistance of counsel, Defendant must demonstrate that counsel failed to exercise the skill, judgment, and diligence of a reasonably competent defense attorney. *State v. Rodriguez*, 107 N.M. 611, 615, 762 P.2d 898, 902 (Ct.App.), *cert. denied*, 107 N.M. 546, 761 P.2d 424 (1988). Defendant must prove both his counsel's incompetence and prejudice. *Chamberlain*, 112 N.M. at 733, 819 P.2d at 683. In determining whether counsel was ineffective, this Court will not second-guess matters of trial strategy or tactics. *State v. Vigil*, 110 N.M. 254, 258, 794 P.2d 728, 732 (1990); *State v. Swavola*, 114 N.M. 472, 475, 840 P.2d 1238, 1241 (Ct.App.), *cert. denied*, 114 N.M. 501, 841 P.2d 549 (1992).

The State's expert, the psychologist who treated the victim, testified concerning the consistency, reliability, and validity of the victim's statements concerning the incident. He also gave his opinion that she was not coached. Without objection, the psycholo-

gist also stated that he saw the victim as being truthful on this issue. Defense counsel had earlier filed a motion in limine to prevent the admission of this testimony, but neither attorney representing Defendant objected. During a bench conference, one of Defendant's attorneys clearly stated that the State had spent an hour and a half delving into this matter that should be excluded. Defense counsel went on to subject the psychologist to extensive cross-examination concerning the basis for his opinion. This cross-examination included questions concerning inconsistencies in the victim's recounting of events and the fact that other experts might view them as indicating a lack of reliability, depending on the expert's subjective decisions about what was important or material. During closing argument, defense counsel used this testimony and emphasized the inconsistencies to assert the victim's lack of truthfulness. Thus, there is a basis in the record for determining that withholding the objection was part of defense counsel's trial strategy. Under these circumstances, we have said that Defendant has failed to show he was deprived of effective assistance of counsel. *See Vigil*, 110 N.M. at 258, 794 P.2d at 732; *Swavola*, 114 N.M. at 475–78, 840 P.2d at 1241–44.

Defendant argues that allowing the psychologist to testify concerning the credibility of the victim and her brother was not a product of sound or rational trial strategy. In support of this argument, Defendant notes that trial counsel's motion in limine to prevent the admission of this testimony was granted, and he asserts that trial counsel did not interview the expert before trial. There is no evidence in the record on this latter point. *See generally State v. Martin*, 101 N.M. 595, 603, 686 P.2d 937, 945 (1984) (matters not of record will not be reviewed by this Court); *State v. Jacobs*, 102 N.M. 801, 805, 701 P.2d 400, 404 (Ct. App.1985) (argument of counsel is not evidence to be considered). Trial counsel may have concluded that the most effective way of countering the expert's admissible testimony was to expose the premises on which that testimony was based and that the premises were faulty in logic or fact. On the present record, we cannot say that defense counsel should have tried to draw a distinction between the psychologist's testimony regarding his opinion on whether the victim had been coached from his opinion that he found her account credible. We think counsel might reasonably have determined that the two opinions were equally flawed, and therefore best challenged as part of the entire line of testimony. Therefore, we are not persuaded that there is a prima facie showing of ineffective assistance, based on the trial record, in failing to object when the psychologist testified he found the victim's account credible.

Defendant also argues on appeal that he was denied effective assistance of counsel because his attorney did not demonstrate that the specifics of the juvenile assault related to the particular knowledge the victim had in this case. We note that this claim is raised in the reply brief, which ordinarily is too late. *See Jaramillo v. Fisher Controls Co.*, 102 N.M. 614, 625, 698 P.2d 887, 898 (Ct.App.), *cert. denied*, 102 N.M. 613, 698 P.2d 886 (1985). Further, without knowing the specifics of the assault, it is impossible to evaluate this issue. *See Martin*, 101 N.M. at 603, 686 P.2d at 945. Thus, on the record as it appears before us, we cannot conclude that Defendant did not receive effective assistance of counsel.

## DENIAL OF REQUEST FOR HEARING

■ More than ten days after the verdict, Defendant filed a motion for a new trial alleging ineffective assistance of counsel. The trial court apparently believed that it could not entertain Defendant's motion for a new trial because the motion failed to allege that there was newly-discovered evidence within the meaning of the rules governing criminal cases in district court, and thus had to have been made within ten days after the verdict rather than within two years after final judgment. *See* SCRA 1986, 5–614(C) (Repl.1992) (motion for a new trial based on any grounds other than newly-discovered evidence shall be made within ten days after verdict or finding of guilty). The State contends that the trial court lost jurisdiction to decide the

motion because it did not hold a hearing on the motion within thirty days of its filing. *Cf. State v. Peppers,* 110 N.M. 393, 397, 796 P.2d 614, 618 (Ct.App.), *cert. denied,* 110 N.M. 260, 794 P.2d 734 (1990) (motion to withdraw guilty plea comes within NMSA 1978, Section 39–1–1 (Repl. Pamp.1991) and under the statute is deemed denied within thirty days). In his reply brief, Defendant concedes that the trial court lacked jurisdiction to rule on his motion. SCRA 5–614(C) provides that "[i]f a motion for new trial is not granted within thirty (30) days from the date it is filed, the motion is automatically denied." The rule requires a decision within the allotted time. *See generally State v. Ratchford,* 115 N.M. 567, 855 P.2d 556 (1993) (discussing SCRA 5–614(C) and citing *Peppers* ).

 This does not preclude Defendant from raising his ineffective assistance of counsel issue or deprive Defendant of his right to appeal. A defendant may argue ineffective assistance of trial counsel on direct appeal regarding matters of record made during the trial or in connection with timely post-trial motions. If the appellate court is persuaded that a prima facie showing of ineffective assistance has been made based on the trial record, this Court may remand for an evidentiary hearing. *State v. Richardson,* 114 N.M. 725, 729, 845 P.2d 819, 823 (Ct.App.), *cert. denied,* 114 N.M. 550, 844 P.2d 130 (1992); *Swavola,* 114 N.M. at 475, 840 P.2d at 1241. In this case, Defendant raised the issue on direct appeal but has not established a basis for remand because there is nothing in the record to show that the presumption of effective assistance of counsel, *see State v. Gonzales,* 113 N.M. 221, 229–30, 824 P.2d 1023, 1031–32 (1992), has been rebutted. Therefore, we will not remand this case.

Nonetheless, Defendant's issue has not been finally resolved. A defendant may raise the issue of ineffective assistance of counsel by motion under SCRA 1986, 5–802 (Repl.1992). *See Duncan v. Kerby,* 115 N.M. 344, 347, 851 P.2d 466, 469 (1993). In fact, SCRA 5–802 motions appear to be the preferred procedure for addressing such issues. *See id.* In particular, SCRA 5–802 allows a defendant to raise issues that are not of record on direct appeal. While the trial court's decisions on such matters are not appealable, an aggrieved defendant may petition the Supreme Court for certiorari from the denial of the motion. *State v. Powers,* 111 N.M. 10, 12, 800 P.2d 1067, 1069 (Ct.App.), *cert. denied,* 111 N.M. 16, 801 P.2d 86 (1990).

CONCLUSION

Defendant's convictions are affirmed.

IT IS SO ORDERED.

DONNELLY and PICKARD, JJ., concur.